IN THE UNITED STATES DISTRICT COURT

FOR THE DISTRICT OF HAWAII

| | | |
|---|---|---|
| UNITED STATES OF AMERICA, | ) | CR NO 05-00383 DAE |
| | ) | |
| Plaintiff, | ) | |
| | ) | |
| vs. | ) | |
| | ) | |
| HARVEY DEAN DAMO, | ) | |
| | ) | |
| Defendant. | ) | |
| _____ | ) | |

ORDER DENYING DEFENDANT'S MOTION TO SUPPRESS EVIDENCE
UNDER THE FOURTH AND FIFTH AMENDMENTS

The Court heard Defendant's Motion on March 3, 2006. Assistant United States Attorney Loretta Sheehan appeared at the hearing on behalf of the Government; Assistant Federal Defender Pamela Byrne appeared at the hearing on behalf of Defendant. After reviewing the motion and the supporting and opposing memoranda, the Court DENIES Defendant's Motion to Suppress Evidence Under the Fourth and Fifth Amendments.

BACKGROUND

Based on the purchase of methamphetamine from Defendant Harvey Damo ("Defendant") by a confidential informant in early September 2005, Hawaii County Police Department ("HCPD") Officer Brian Prudencio applied to the

Honorable Barbara Takase for a warrant to search Defendant's home.  In his affidavit for search warrant, Officer Prudencio indicated that the property to be found is "property that constitutes evidence of the commission of the offense(s) of PROMOTING A DANGEROUS DRUG III, Section(s) 712-1243 of the Hawaii Revised Statutes" and "contraband by violation of Section(s) 329.43.5 of the Hawaii Revised Statutes."  (Def.'s Mot., Ex. B; Gov.'s Opp., Ex. A.)  The affidavit then proceeded to request permission to search Defendant's property for certain items.  In conjunction with the affidavit, Officer Prudencio attached an eight page statement which detailed information about the confidential informant, a probable cause statement, and relevant background pertaining to the possession of and distribution of methamphetamine.  (Id. at Ex. B; Def.'s Mot., Ex. C.)

On September 12, 2005, the Honorable Barbara Takase issued the warrant, which permitted the search of Defendant's residence, "including all rooms, attics, basements, garages, outbuildings, and appurtenant structures therein; and any vehicles thereon."  (Gov.'s Opp., Ex. C; Def.'s Mot., Ex. A.)  The warrant also covered the following items:  methamphetamine; methamphetamine paraphernalia; articles of personal property tending to identify person(s) in control of property; photographs, records, ledgers and other documents relating to drug transactions; currency related to the sale and/or distribution of methamphetamine;

firearms and ammunition for said firearms; and articles of personal property tending to establish the identification of person(s) in control of vehicle(s).  (Id.)

HCPD executed the warrant on September 12, 2005, at approximately 4:00 p.m.  Defendant was not home, but two females and two males were present.  The warrant, to which the affidavit was attached, was left in plain view on a table in Defendant's residence.  According to the Government, the following items were found during the course of the search:  68 marijuana plants in pots (north side of Defendant's home); 161.4 grams of dried marijuana on a bed, 1.0 grams of dried marijuana on a desk, and 3.3 grams of dried marijuana in a closet shelf (all in Defendant's bedroom); 20.3 grams of marijuana seeds and a marijuana cigarette (in the refrigerator); small packets containing crystal methamphetamine and a glass smoking pipe containing residue, as well as empty plastic packets, glass smoking pipe and a scale (in a second bedroom); and five boxes of 22 caliber ammunition, two boxes of CCI 22 long rifle Stinger ammunition and three boxes of Winchester Super X Hollow Point High Velocity 22 caliber ammunition (in the kitchen).  (Id. at 3-4.)

One of the females present at Defendant's residence took HCPD officers to the location where she was scheduled to pick up Defendant at 7:00 p.m.  Upon arrival at the location, identified by the female as Defendant's "marijuana

patch," officers saw Defendant crouched in the bushes with a J. Stevens Arms 22 caliber rifle and a full backpack in front of him. (Id. at 4.) Shortly thereafter, HCPD officers arrested Defendant.

After arriving at the station, Officer Robert Hironaka asked for Defendant's permission to search the backpack in Defendant's possession at the time of his arrest. Officer Hironaka then read, word for word, the Hawaii Police Department Advice of Search and Seizure Rights and Consent to Search form ("Consent to Search form") to Defendant, which Defendant signed following his acknowledgment that he understood his rights. (Id. at 5 and Ex. D.) At the hearing, Officer Hironaka testified that at the time Defendant consented, Defendant was in an interview room, uncuffed. Officer Hironaka described Defendant's demeanor as agreeable and pleasant. The search of the backpack yielded three pounds of dried marijuana, along with other items such as a camera, clothing, water and food. Officer Hironaka also asked Defendant for permission to develop film from a camera found in the search of Defendant's backpack, again using the Consent to Search form. Defendant signed the form. (Id. at 5 and Ex. E.) Officer Prudencio, present as a witness, testified that Defendant was friendly and cooperative.

At approximately 9:00 p.m., Officer Hironaka, through the use of an Advice of Rights form, reviewed Defendant's Miranda rights, word for word, with Defendant. Thereafter, Defendant agreed to waive his rights and provide a statement. (Id. and Ex. F.) Officer Prudencio was also present as a witness. Officer Hironaka testified that Defendant's comprehension of his rights and subsequent waiver of those rights seemed good and that Defendant remained calm and cooperative during their exchange.

On September 13, 2005, the following day, ATF Special Agent ("SA") Jeffery Kearns met with Defendant in an interview room at the Hawaii County Police Station. SA Kearns testified that he had a conversation about Defendant's constitutional rights prior to commencing the interview. SA Kearns testified that during the conversation, he told Defendant that he was aware that HCPD officers had advised Defendant of his rights and that he would like to talk to Defendant. He asked Defendant if Defendant would be willing to waive his rights again. Defendant acknowledged receiving, understanding and waiving his rights and agreed to speak with SA Kearns.

## DISCUSSION

Defendant moves to suppress numerous items, including ammunition, marijuana, photographs, narcotics paraphernalia, and a rifle. Defendant seeks to

suppress the items on the grounds that the warrant failed to meet the probable cause and particularity requirements of the Fourth Amendment. Additionally, Defendant asserts that items seized through his voluntary consent must be suppressed unless the Government proves the lawfulness of the search. Defendant lastly moves to suppress statements made by Defendant, arguing that such statements may not be admitted unless the Government can prove that they were made voluntarily.

A.      Evidence Seized From Defendant's Home

The gravamen of Defendant's Motion is that the warrant and the underlying affidavit lacked probable cause and failed to state, with particularity, the things or places to be seized or the crime under investigation. Specifically, Defendant argues that there was no probable cause to search vehicles on his property or to seize firearms and ammunition. Defendant asserts that as a consequence of the deficiencies of the warrant, all evidence seized should be suppressed.

The Government counters that the warrant provided probable cause to search all vehicles on Defendant's property and to search for firearms and ammunition. With respect to the vehicles, the Government argues that because evidence is often found where the dealers live in drug cases and that a vehicle is a

reasonable place to find items indicating control of property, the Honorable Barbara Takase reasonably concluded that probable cause existed.  Alternatively, the Government asserts that no evidence was recovered from the vehicles on Defendant's property and his argument is moot because there is nothing to suppress.

As for the firearm and ammunition, the Government points to the affidavit as providing sufficient probable cause to search Defendant's property for firearms and ammunition.  The Government further argues that even if the ammunition found in Defendant's home were obtained via an illegal search, that it would have inevitably been found because of its proximity to the methamphetamine and paraphernalia.  Similarly, the Government notes that the Fourth Amendment is not implicated with respect to the seized rifle because it was in plain view at Defendant's feet when the officers discovered him in an open field.

The Fourth Amendment provides that "no Warrants shall issue, but upon probable cause, supported by Oath or affirmation, and particularly describing the place to be searched, and the persons or things to be seized."  U.S. Const. amend. IV.  Four requirements must be met for a warrant to be valid:  1) probable cause; 2) support by oath or affirmation; 3) particularity in describing the place to

be searched; and 4) particularity in describing the persons or things to be seized. See Groh v. Ramirez, 540 U.S. 551, 557 (2004).

"Probable cause 'means less than evidence which would justify condemnation, and . . . may rest upon evidence which is not legally competent in a criminal trial.'" U.S. v. Bridges, 344 F.3d 1010, 1014-15 (9th Cir. 2003) (citing United States v. Ventresca, 380 U.S. 102, 107 (1965) (internal quotation marks and citations omitted)). A totality of the circumstances approach is traditionally employed in a probable cause determination. Id. at 1014. The Supreme Court has said that "[t]he task of the issuing magistrate is simply to make a practical, common-sense decision whether, given all the circumstances set forth in the affidavit before him . . . there is a fair probability that contraband or evidence of a crime will be found in a particular place." Id. (quoting Illinois v. Gates, 462 U.S. 213, 238 (1983) (quotations omitted)). A reviewing court's duty "is simply to ensure that the magistrate had a substantial basis for . . . conclu[ding] that probable cause existed." Id. (quoting Illinois, 462 U.S. at 238 (quotations omitted) (alterations in original)).

A warrant must also be sufficiently particular. "A warrant that fails to conform to the particularity requirement of the Fourth Amendment is unconstitutional." Groh, 540 U.S. at 559 (quotations and citations omitted). "The

Supreme Court has held that 'the presumptive rule against warrantless searches applies with equal force to searches whose only defect is a lack of particularity in the warrant.'" U.S. v. Sears, 411 F.3d 1124, 1127 (9th Cir. 2005) (quoting Groh, 540 U.S. at 559).  Warrants lack sufficient particularity "when they have failed to specify the items to be seized, or the location to be searched."  Id. (quoting United States v. Hotal, 143 F.3d 1223, 1226 (9th Cir. 1998) (quotations omitted)).  "The fact that the application adequately described the 'things to be seized' does not save the warrant from its facial invalidity.  The Fourth Amendment by its terms requires particularity in the warrant, not in the supporting documents."  Groh, 540 U.S. at 557 (citing Massachusetts v. Sheppard, 468 U.S. 981, 988 n.5 (1984)).

In this case, the warrant appears to meet all of the requirements mandated by the Fourth Amendment.  First, the warrant was issued based on probable cause.  Second, the warrant was supported by oath or affirmation.  Third, the warrant described, with particularity, the place to be searched.  Last, the warrant described, with particularity, the persons or things to be seized.

The Court looks at the totality of circumstances in a probable cause determination.  All that is required of a judge issuing the warrant is to make a practical decision, based on all the circumstances set forth in the affidavit before the court, that a fair probability exists that contraband or evidence of a crime will

be found in a particular place.  The affidavit and supporting documents that Officer Prudencio submitted to Judge Takase detailed the background and information about Defendant's activities and requested a warrant to search the property at which Defendant resided for specific items related to Defendant's drug activities.  The eight page statement (affidavit of Officer Brian Prudencio) that Officer Prudencio incorporated by reference to the affidavit for search warrant explained HCPD's investigation of Defendant as well as Officer Prudencio's experience and training in the field of methamphetamine identification and drug and narcotic investigation.

      Officer Prudencio specifically discussed the purchase of methamphetamine from Defendant by a confidential informant and observations made by the informant during the purchase, which occurred at Defendant's residence.  Regarding his experience, Officer Prudencio noted that he has conducted over 100 investigations involving methamphetamine and gathered intelligence about the weighing, packaging and distributing of methamphetamine through interviews.  Based on information obtained in these interviews and his personal experience, Officer Prudencio stated that during the execution of search warrants upon residences, methamphetamine and paraphernalia are often found in vehicles because of the use of vehicles to conduct distribution.  Firearms and

ammunition were also among the items commonly recovered during the execution of warrants because of their use to protect the drug inventory located at the property.

Given the detail and thorough discussion presented by Officer Prudencio, which Judge Takase considered in determining whether to issue the warrant, the Court cannot say that the warrant lacked probable cause with respect to the vehicles[1] or firearms[2] and ammunition, or anything else for that matter. The affidavit for search warrant and supporting document provided Judge Takase with a substantial basis for concluding that probable cause existed. Therefore, the Court determines that the first two requirements of the Fourth Amendment are satisfied. The last two requirements involve particularity and are also challenged by Defendant.

---

[1] As the Government pointed out, nothing was recovered from the vehicles so there is no evidence to suppress in that respect anyway.

[2] Even though the Court finds that probable cause exists, the firearm seized in this case was in plain view when officers found Defendant. It was not found during the course of the search of Defendant's residence. Rather, as Officer Hironaka testified, a third-party led HCPD to Defendant at a location approximately two miles from Defendant's residence.

It is clear that the warrant stated, with particularity, the place to be searched[3] and the items to be seized.[4]  Defendant primarily takes issue with the warrant's language authorizing the search of "any vehicle" and for "[f]irearms and ammunition for said firearm" because these are not descriptions of the particular things to be searched or seized.  Defendant's contention cuts against his position because vehicles and firearms and ammunition are specific items.  The particularity requirement is not met when a warrant fails to specify the items to be seized or the

---

[3] The warrant states the place to be searched as:

> A residence located in the 9 ½ Mile Camp in Keaau, District of Puna, County and State of Hawaii, a split level wooden structure with post and pier and cement foundation, with light gray colored walls, with blue colored trim and metal corrugated roof, and an unattached gray tarpaulin fronting the residence, more particularly located by traveling South on Route 11, turn right into the second entrance of the 9 ½ Mile Camp pass the eight mile-marker, and it is the second house on the left.  It is owned by unknown person(s) but occupied by Harvey DAMO . . . .

(Gov.'s Opp., Ex. C; Def.'s Mot., Ex. A.)  There is no dispute that this is Defendant's residence.

[4] The warrant permitted HCPD officers to search for the following items: methamphetamine; methamphetamine paraphernalia; articles of personal property tending to identify person(s) in control of property; photographs, records, ledgers and other documents relating to drug transactions; currency related to the sale and/or distribution of methamphetamine; firearms and ammunition for said firearms; and articles of personal property tending to establish the identification of person(s) in control of vehicle(s).

location to be searched.  Here, the warrant contains a specific list of items to be searched and a detailed description of the property from which these items may be seized.  While it is true that even a specific list of items can render a warrant overbroad when it is so expansive that it allows all of a defendant's property to be seized, that is not the case with the instant warrant.  See Bridges, 344 F.3d at 1017 ("Search warrants . . . are fundamentally offensive to the underlying principles of the Fourth Amendment when they are so bountiful and expansive in their language that they constitute a virtual, all-encompassing dragnet of personal papers and property to be seized at the direction of the State.").  The list of items to be seized related to the methamphetamine investigation and by no means permitted HCPD to seize all of Defendant's property.

        Defendant also contends that because the warrant itself did not reference a specific criminal activity, it is not sufficiently particular.  "The Fourth Amendment requires search warrants to state with reasonable particularity what items are being targeted for search or, alternatively, what criminal activity is suspected of having been perpetrated."  Id. at 1017-18 (citing Marron v. United States, 275 U.S. 192, 196 (1927)) (emphasis added).  The purpose of this requirement is to ensure that "executing officers [are] able to identify from the face of the warrant, as well as any attached or expressly incorporated documents, what

13

it is that they are being asked to search for and seize from the target property." Id. at 1017. Because the Court has already determined that the warrant was sufficiently particular, Defendant's argument fails. Although the warrant does not specify the criminal activity on its face, HCPD would clearly be able to discern what they were being asked to search for and seize from Defendant's residence.

      Even if the warrant were not sufficiently particular as to the items being targeted for search, the affidavit's mention of the criminal activity under investigation could satisfy the particularity requirement. "An affidavit providing more guidance than an overbroad warrant may cure the warrant's overbreadth only if (1) the warrant expressly incorporated the affidavit by reference and (2) the affidavit either is attached physically to the warrant or at least accompanies the warrant while agents execute the search." Id. at 1018 (quoting United States v. Kow, 58 F.3d 423, 429 n.3 (9th Cir. 1995) (quotations omitted)). Officer Prudencio's affidavit for search warrant listed two offenses and their respective statutes. Moreover, the warrant itself states that it relies on affidavit(s) and the affidavit was attached to the warrant. Based on these facts, Defendant's argument does not justify suppressing evidence as a result of a insufficiently particular warrant.

B.    Searches Executed as a Result of Defendant's Consent

Defendant secondly argues that the Government bears the burden of proving that Defendant freely and voluntarily consented to the search of his backpack and in giving permission to develop film found in a camera. Unless the Government does so, Defendant argues that the evidence should be suppressed. As part of his argument, Defendant claims that he "has not received reports detailing the nature of his arrest or the steps the officers took to gain his consent to search a camera and backpack." (Def.'s Mot. at 24.) The Government asserts that HCPD officers, without threats or coercion, reviewed the consent form with Defendant and he thereafter stated that he understood the form and signed it. (Gov.'s Opp. at 18.)

The Fourth Amendment proscribes unreasonable state-initiated searches and seizures. Morgan v. United States, 323 F.3d 776, 780-81 (9th Cir. 2003). "A search not supported by probable cause may still be reasonable if the subject of the search consents to it. Such consent may be express or implied." Id. at 781 (citations omitted). In determining whether implied consent was voluntarily given, the court must look at the totality of the circumstances. United States v. Ellis, 547 F.2d 863, 866 (5th Cir. 1977). The court considers the following factors to assess the voluntariness of the search: "(1) whether the defendant was in

15

custody; (2) whether the arresting officers had their guns drawn; (3) whether Miranda warnings were given; (4) whether the defendant was notified that she had a right not to consent; and (5) whether the defendant had been told a search warrant could be obtained." U.S. v. Jones, 286 F.3d 1146, 1152 (9th Cir. 2002) (citing United States v. Castillo, 866 F.2d 1071, 1082 (9th Cir. 1989)).

In this case, Officer Hironaka testified that Defendant was in custody in an interview room with himself and one other officer serving as a witness. During such time, Defendant remained uncuffed and unguarded, and no weapons were drawn. Prior to giving Defendant his Miranda rights, Officer Hironaka obtained consent to search Defendant's backpack and to develop film from a camera found in the search of Defendant's backpack. Officer Hironaka reviewed a Consent to Search form with Defendant which clearly stated: "You have a constitutional right not to have a search made of your premises, vehicle or property without a search warrant and to refuse to consent to such search without a warrant." (Gov.'s Opp., Ex. E.) Officer Hironaka testified that Defendant then stated that he understood his rights and signed the form. Defendant was not informed whether a search warrant could be obtained.

According to the evidence before the Court, Defendant, after being notified of his constitutional rights, expressly and voluntarily consented to the

16

search of his backpack and to develop the film in the camera found in the backpack. There is not even an indicia of evidence to suggest that Officer Hironaka improperly obtained consent by way of threats or coercion. Rather, Defendant and the officers were calm and Officer Hironaka obtained Defendant's consent shortly after Defendant's arrival at the station. The Court thus denies Defendant's request to suppress the evidence obtained by way of his voluntary consent to search.

C.      Statements Obtained From Defendant

Defendant lastly argues that any statements he made to law enforcement officers should be suppressed under the Fifth Amendment. His basis for this contention is that before his statements are found admissible, he must have a hearing and that the Government must show that he was read his Miranda rights and that he knowingly and voluntarily waived those rights before giving the statements. The Government proffers that Defendant knowingly and intelligently waived his Miranda rights before voluntarily giving his statement to both the HCPD officers and ATF special agent on September 12, 2005 and September 13, 2005, respectively.

"The validity of a Miranda waiver depends on the totality of the circumstances and whether the defendant 'was aware of the nature of the right

being abandoned and the consequences of the decision to abandon it.'" <u>United States v. Labrada-Bustamante</u>, 428 F.3d 1252, 1259 (9th Cir. 2005) (citation omitted). When considering the totality of the circumstances, age, experience, education, background and intelligence are relevant factors. <u>Id.</u> (quoting <u>United States v. Frank</u>, 956 F.2d 872, 877 (9th Cir. 1991)). Express waivers are not required for Miranda waivers. <u>Id.</u> at 1262; <u>see</u> <u>also</u> <u>United States v. Cazares</u>, 121 F.3d 1241, 1244 (9th Cir. 1997) ("To solicit a waiver of Miranda rights, a police officer need neither use a waiver form nor ask explicitly whether the defendant intends to waive his rights.") They may be impliedly given by answering officers' questions after Miranda warnings are administered. <u>United States v. Rodriguez-Preciado</u>, 399 F.3d 1118, 1127 (9th Cir. 2005). However, valid waivers of rights must be voluntarily, knowingly, and intelligently given. <u>Id.</u> "The burden is on the government to prove voluntariness, but the voluntariness of a waiver 'has always depended on the absence of police overreaching, not on "free choice" in any broader sense of the word.'" <u>Cazares</u>, 121 F.3d at 1244 (quoting <u>Colorado v. Connelly</u>, 479 U.S. 157, 170 (1986)).

      Here, Officer Hironaka gave Defendant Miranda warnings using the Advice of Rights form. Defendant initialed and signed the "waiver of rights" section of the form after Officer Hironaka explained Defendant's rights. The use

of this form goes far beyond what is required to obtain a waiver of rights. It is clear from Officer Hironaka's testimony that Defendant understood his rights and knowingly waived those rights. When asked if he understood his rights, Defendant answered in the affirmative. The only way that the waiver could thus be deemed invalid is if it was not voluntary. There is no evidence that Officer Hironaka or any other officer threatened or coerced Defendant to give statements to the police. In fact, Officer Hironaka testified that he remained calm while speaking to Defendant. The Court accordingly finds that Defendant voluntarily, knowingly and intelligently waived his rights prior to giving statements to HCPD.

The same is true for the statements obtained by SA Kearns. The Court has already determined that Defendant waived his rights. When SA Kearns spoke to Defendant on September 13, 2005, one day after Defendant's arrest, SA Kearns discussed the fact that Defendant had waived his rights. At the hearing, SA Kearns testified that he told Defendant that he wanted to speak to Defendant and asked Defendant if he would be willing to waive his rights again. Defendant agreed and stated that he wanted to talk to SA Kearns. This waiver was also voluntary, knowing and intelligent. It was not necessary for SA Kearns to Defendant and there is again no evidence of police overreaching to

obtain statements from Defendant.  Therefore, the statements obtained by SA Kearns are not suppressed.

## CONCLUSION

For the reasons stated above, the Court DENIES Defendant's Motion to Suppress Evidence Under the Fourth and Fifth Amendments.

IT IS SO ORDERED.

DATED:  Honolulu, Hawaii, March 6, 2006.



_____
David Alan Ezra
United States District Judge

United States of America v. Harvey Damo, CR No. 05-00383 DAE; ORDER DENYING DEFENDANT'S MOTION TO SUPPRESS EVIDENCE UNDER THE FOURTH AND FIFTH AMENDMENTS